### CURTIS v. ATLAS CO.

(Circuit Court, D. New Jersey. March 11, 1905.)

PATENTS—INFRINGEMENT—TREAD FOR BICYCLE PEDALS.

The Curtis patent, No. 533,867, for a detachable rubber-faced foot-rest for bicycle pedals, claims 1 and 2, were not anticipated, and disclose invention. Claims 3 and 4 are void, as too indefinite and uncertain. Said claims 1 and 2 also *held* infringed by the device of the Wirtz patent, No. 679,043.

In Equity. Suit for infringement of letters patent, No. 533,867, for a velocipede treadle, granted to Albert B. Curtis February 12, 1895. On final hearing.

Southgate & Southgate, for complainant.
Theodore B. Booream, for defendant.

ARCHBALD, District Judge.[1] It is somewhat remarkable that with all the ingenuity and skill, inventive as well as mechanical, which has been brought to bear upon the manufacture of bicycles, so simple and convenient an appliance as the detachable rubber foot-rest devised by the complainant should not have been thought of before. The fact that it had not, and that it has gone into such extended use as was shown, not only proves that it has met a popular and hitherto unfilled demand, but is also persuasive that its discovery involved the exercise of real invention, and not simply the handy skill of the ordinary mechanic, as one might at first be inclined to believe. The invention displayed may not be of a high order, but it was, at least, sufficient to appreciate the need, and the means for meeting it acceptably, where others had failed, a circumstance which always has weight.

The object is to provide a readily applied and easily removable attachment for converting a so-called "rat-trap" or tooth-edged pedal into one with a rubber-faced tread, in order that the rider may have the benefit of either, on the same machine, at will. The idea is not new, there being several convertible, as well as detachable, devices in existence, at the time that this one was produced, having the same purpose in view; and the novelty of the complainant's invention is made to

---

[1] Specially assigned.

reside, in consequence, in the particular construction adopted. As shown by the accompanying diagrams, the device is made up of a T-shaped metal shell or frame, upon which an upper facing of corrugated rubber is set; the shell consisting of a flattened horizontal tubular body or core, and parallel vertical sides or holding plates, extending down at right angles therefrom, and so separated and arranged as to receive the serrated edge of the ‘pedal plate between them; the rubber facing or cushion being cast upon and completely enveloping the core or body, to which it is anchored by means of holes or perforations in the metal, into which the rubber flows; and the whole appli-

ance being fastened in place, when in use, by a screw-head bolt and nut, extending through corresponding eyes in the holding and pedal plates, provided for the purpose.

That this differs in principle and construction from anything which had gone before is plain. Confining our attention to bicycle pedals, which is the immediate art involved (although there is nothing in any other which need disturb us), convertible foot-rests, by which a rat-trap effect, or a cushion tread, upon the same pedal, is interchangeably secured, are to be found in the Jeffrey (1889), the Wise (British, 1892), the Allday (British, 1893), and the Shultz (1893); and detachable ones, in the Murray (1892), the Jeffrey (1888), the A. Perkins (1894), and the R. Perkins (1895). The conversion in the Jeffrey (1889) and the Allday is accomplished simply by turning the pedal upside down, one surface having a tooth or rat-trap edge, and the other a rubber tread or pad, the pedal being properly characterized as a compound reversi-

ble one. The same is true of the Shultz, although this may be classed as both detachable and reversible, the rubber strips, which cover over the serrated edges of the longitudinal troughs in which they are set to form an elastic tread, being removable when a rat-trap effect · is desired; while in the Wise both constructions are present at the same face, the rat-trap teeth lying a little below the normal level of the

THE JEFFREY (1879)

THE SHULTZ.

THE ALLDAY.

THE SHULTZ.

THE MURRAY.

rubber, and being brought into play by an increased pressure of the foot of the rider, the elasticity of the rubber being designed to give way and enable the teeth to be engaged. These are all so far removed from anything to be found in the invention in suit as to call for nothing more than the notice so given them. Of the detachable devices, the Murray consists of a sheet-metal sleeve, in the form of a scroll, armed on its exposed surfaces with teeth, and so fashioned as to be capable of being slipped over the cylindrical bars which form the normal tread

of the pedal on which it is designed to be used. In the Jeffrey (1888) the ordinary forms are also departed from, and pedals are provided, having V or polygonal shaped troughs upon their upper surface, into which removable rubber strips are set, which are held in place by ribs or corrugations extending along the sides of the troughs, and fitting

THE JEFFREY (1888)

THE A. PERKINS.

into corresponding recesses in the rubber; while the upper edges of the troughs are extended above the surface of the pedal and provided with teeth, so that, upon the removal of the rubber strips, a rat-trap edge is laid bare. The A. Perkins, also, has detachable flat rubber strips or pads, which are bolted to the surface of the pedal, and still further held in place by flanges on the outer edge of the pedal plates. Where it is desired that the pedal shall be convertible, these flanges

136 F.—15

are given rat-trap teeth, which are brought into service by the removal of the pads. In the R. Perkins the usual metal pedal plates, with spurs or teeth of the ordinary rat-trap type, on both edges, are shown; the detachable device consisting of blocks of rubber, having corrugated wearing surfaces, which are secured by clamping plates and bolts against the inner face of the pedal plates, and, being wider than them, project above and beyond the rat-trap teeth upon the edges. This may be regarded as one of the most effective devices preceding that in suit, and in some respects approaching the nearest to it. But, like all the other detachable foot-rests which have been spoken of, it has to be fitted in size and construction to the particular form of pedal upon which it is to be used; and neither does it possess, any more than the rest, the unitary structure, which is a conspicuous point of merit in the one in hand. Differing in this, and other respects too obvious to require discussion, from anything which had gone before, the present invention is clearly new and valid.

The question of infringement is not so readily disposed of. It depends upon the construction to be given to the claims of the patent by which the invention is defined. There are four of these, and all of them are relied upon as follows:

Fig. 6.

Fig. 7

"(1) In rat-trap and similar pedals for velocipedes, detachable foot-rests, adapted to be applied to the rat-trap plates, and having parallel holding plates projecting therefrom, adapted to be fitted to said rat-trap plates, and means for fastening said holding plates to the rat-trap plates, substantially as and for the purpose set forth.

"(2) In rat-trap and similar pedals, the detachable foot-rests, F, F, adapted to be applied to the rat-trap plates, in combination with an irregular shaped, metal-holding plate fastened thereto, by embedding a portion thereof in said foot-rest, and consisting of the central body, f, and parallel plates, b, b, projecting at right angles therefrom, and means for fastening said parallel plates to the rat-trap plates, substantially as and for the purpose set forth.

"(3) A detachable foot-rest for rat-trap pedals, having a clamp shaped to receive a rat-trap plate, and faced with rubber, and means for detachably securing said clamp to said plate, substantially as described.

"(4) A detachable foot-rest for rat-trap pedals, having a perforated metallic clamp adapted to receive a rat-trap plate, a rubber facing cast upon and extending through the perforations of the metallic clamp, and means for detachably securing said clamp to said plate, substantially as described."

Of these claims, the third and fourth are altogether too indefinite and general to be sustained. The only structural elements suggested for the detachable foot-rest mentioned in the first of these (3) are (1)

"a clamp, shaped to receive a rat-trap plate, and faced with rubber"; and (2) "means for detachably securing said clamp to said plate." But no right is claimed, or indeed could be, to the broad idea of applying a detachable rubber foot-rest to cover over the teeth of a rat-trap pedal, and that is practically all that we have here. With all the legitimate aid that can be derived for it from the specifications, the device which is so put forward consists of nothing more than a so-called "clamp" (admittedly a misnomer), neither limited nor described (and therefore capable of indefinite extension), except as it is to be faced with rubber and shaped or fashioned to receive a rat-trap pedal plate; and means equally general and indefinite, for detachably securing the device in place. This goes far beyond anything for which the invention covered by the patent is supposed to stand, which admittedly contemplates a detachable foot-rest of very definite character and construction, secured in a specifically prescribed manner, upon which its claim to novelty unquestionably depends.

Neither is the fourth claim materially better. It differs from the other merely in the requirement that the so-called "clamp" shall be metallic and perforated, and that there shall be a rubber facing, extending through the perforations, cast upon it. These are details of construction adding something, it is true, and yet but little, the essential characteristics of the inventions, such as its upper tubular body and downwardly projecting parallel holding plates, arranged to receive and hold between them the outer edges of the rat-trap plates, being entirely omitted. Neither is this to be helped out by identifying the "clamp," which is spoken of, with the structural body, having the several parts referred to, which is described in the specifications. No such term there appears, nor is it appropriately applied to or suggested by anything which does. As already stated, it is a misnomer, if so intended, and there is nothing to warrant our carrying forward into the claim, under the guise of it, whatever may happen to be lacking there.

But no such objections can be made to the remaining claims, which are sufficiently expressive of the invention; and the only question is whether they have been infringed. The defendant's foot-rest is manufactured according to the Wirtz (1901) patent, and is substantially, in all respects, like that of the complainant, except that it has one, instead of two, holding plates, or, at least, that there is only one which extends below the body of the foot-rest, or is made use of in securing the device in place. Its exact construction is shown by the following diagrams taken from the patent, and is the same to all appearances as if one of the complainant's holding plates had been cut off at the rubber face, a transformation which can be in fact effected in a few minutes with a file. If two parallel holding plates, of equal length below the core or tubular body, both fitting over the rat-trap edge, and conjointly employed in fastening the foot-rest to the pedal plates, are essential to the complainant's invention, the defendants do not infringe. But otherwise they do. Undoubtedly parallel holding plates—in the plural—projecting downwards from the tubular core or body of the foot-rest are called for, but there is nothing

which requires that they should be of equal length, or that the foot-rest should be fastened to the pedal by means of both. So far as the former construction is concerned, whether we have regard to the terms of the claims or the function to be performed, it is sufficient if they both receive and hold between them the outer edges of the rat-trap plate, a condition which is fulfilled where one of them, as in the defendant's device, stops at the edge of and just before emerging from under the rubber face. A slot or space extending longitudinally between the two is thereby provided, which is adapted to receive and be fitted over the rat-trap plate to be covered, the holding plate which has not been shortened up in the way suggested being left to extend down a sufficient distance to be fastened to the pedal plate with a bolt. This is the whole principle of the invention, and, upon the most ordinary range of equivalents, must be regarded as structurally the same. It presents the not unusual case of a partial dispensing with one of two similar members, the function of both being equally well performed by the one which remains. In-

fringement is not to be escaped by any such expedient, as has been often held.

It is said, however, that the defendant's foot-rest with its single holding plate can be applied in many cases where the complainant's cannot, thus making it much more effective and serviceable; as, for instance, where the pedal plate, to which it is to be attached has an outwardly bulging, longitudinal ridge or boss, as is sometimes provided for the purpose of strengthening it; or, again, where the pedal plates are unusually long; or have simply a plain edge, without any serrations; in which case they do not fit into the slot provided for them in the complainant's device, which is compelled in consequence to ride upon them. Also that the defendant's rest can be clamped in pairs upon the opposite edges of the same pedal plate, giving a cushion tread on both; and that by dispensing with the second holding plate the rubber facing is enabled to be carried down over the edge, and into the interior of the metal shell or core, thus securing an elastic fit for the rat-trap teeth and preventing them from clicking. But assuming all this to be true, the result remains the same. These at the most constitute matters, not of distinction, but merely of advance or improvement, sufficient, it may be, to justify the patent which was granted upon them, but nevertheless leaving the one device dependent upon the other for the general underlying idea, for which it must therefore pay tribute.

Let a decree be drawn sustaining the first two claims of the patent, and finding them infringed, and referring the case to a master to take an account.